United States Courts
Southern District of Texas
FILED
*March 19, 2024*
Nathan Ochsner, Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| STACI BARBER, <br><br> Plaintiff, <br><br> vs. <br><br> KATY INDEPENDENT SCHOOL DISTRICT; BRYAN SCOTT ROUNDS, Principal of Cardiff Junior High, sued in his individual and official capacities, <br><br> Defendants. | Civil Action No.: **4:24cv1004** <br><br> **VERIFIED COMPLAINT** |

Plaintiff, Staci Barber, brings this action for declaratory and injunctive relief in order to vindicate her constitutional and civil rights to engage in private religious expression pursuant to her sincerely held religious beliefs. The Katy School District ("KISD" or "Katy ISD") violated, and continues to violate, her rights to religious expression by prohibiting her from praying when students might be present, even if that prayer occurs off the clock.

**I.    PARTIES**

1. Plaintiff, STACI BARBER, is an individual who currently, and at all relevant times, is a citizen of the United States and a resident of Cypress, Texas.

2. Defendant, KATY SCHOOL DISTRICT, is a school district in Katy, Texas, with an address of 6301 S. Stadium Lane, Katy, Texas 77494.

1

3. Defendant, BRYAN SCOTT ROUNDS, is the principal of Cardiff Junior High, a school that is part of the Katy School District and is the school where Staci Barber is employed. Rounds is sued in his individual and official capacities.

## II. JURISDICTION AND VENUE

4. This civil rights action raises federal questions under the United States Constitution, particularly the First and Fourteenth Amendments, and the Civil Rights Act, 42 U.S.C. § 1983 et seq.

5. This Court has original jurisdiction over these federal claims pursuant to 28 U.S.C. § 1331.

6. This Court has authority to award the requested declaratory relief pursuant to 28 U.S.C. §§ 2201–02; the requested injunctive relief pursuant to 28 U.S.C. § 1343 and Fed. R. Civ. P. 65; and costs and attorneys' fees under 42 U.S.C. § 1988.

7. This Court has supplemental jurisdiction over the state constitutional and statutory claims made herein pursuant to 28 U.S.C. § 1367.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), because Defendants reside in this district and division and/or all the acts described in this Complaint occurred in this district.

## III. FACTUAL ALLEGATIONS

### a. Background

9. Staci Barber is a math teacher in the Katy School District at Cardiff Junior High. This is her twenty-sixth year of teaching; she has taught eight years in Katy following eighteen in Alief, Texas.

10. Staci Barber is a Christian who regularly engages in prayer and other expressions of her faith.

11. In 2015, Barber started as a math teacher at Katy. She came to Katy from Alief ISD, where she had been a sponsor of the campus Christian group Students for Christ. On her first week at Katy, she asked Defendant, Principal Scott Rounds, about starting a campus chapter of Students for Christ. He told her that Katy does not have religious clubs and that Cardiff was not allowed to have any religious clubs per Katy ISD. She asked about starting a Christian club several more times over the years, whenever she saw a reminder that other schools at Katy ISD had such clubs.

12. At the beginning of the 2023-24 school year, three Cardiff students filled out club paperwork, stating that they would like to start a Fellowship of Christian Athletes ("FCA") chapter. Several students also wanted to participate but told teachers they were afraid of what Principal Rounds would do or say to them if they did so. One student specifically told Staci Barber that "he was scary."

13. Principal Rounds pulled one of the students who filled out the FCA student leader paperwork out of math class to ask if "he was sure he wanted to start the club." The student missed the entire 45-minute class because of the questioning, which was an intense period of one-on-one questioning with Principal Rounds. Principal Rounds tried to pull the other two student leaders out of their class the same day, but they said they would rather talk the next day.

14. After this process, Principal Rounds eventually approved the FCA application.

15. Many other schools in the Katy ISD have religious student groups without issue, including several FCA groups, Muslim student groups, and groups associated with other religions.

   b. **See You at the Pole**

16. *See You at the Pole* ("SYATP") is an event held on the fourth Wednesday of September where millions of people around the country gather at school flagpoles to engage in prayer and religious activity before the school day begins. This event is a student-led and student-initiated prayer activity that occurs before the school day has begun, but concerned adults, including teachers and other school employees around the country, regularly participate to support and encourage those student leaders.

17. Staci Barber has participated in this event and prayed at the pole for as long as she has been a teacher at Cardiff Junior High.

18. At the beginning of the 2023-24 school year, Katy school policy contained the following language:

> The District is committed to the constitutional principle of separation of church and state. Board Policy makes it clear that employees will neither advance nor inhibit religion. **Employees may not pray with or in the presence of students**. However, nothing prevents a teacher or other employee from praying or reading religious materials during a time when students are not present. If a group of employees wishes to pray together, read the Bible, or engage in some other religious activity, they may do so as long as the activity does not interfere with their duties or the rights of other employees or students.

(Emphasis added).

19. Mr. Rounds had never made an issue regarding prayer at the pole before, but this year was different, and he behaved in a hostile fashion. FCA was approved the day before the event, September 26, 2023, and Principal Rounds approved that FCA students could meet to pray at the pole before the school day began specifically at 8:20, when work hours for teachers had begun, but classes had not. Staci had already sent an email to the staff inviting them to gather to pray entirely before school hours at 8:00 am, before they were on the clock and before the prayer time for the FCA students.

4

20. In response to Staci Barber's email, Principal Rounds sent out the following email to all staff, accompanied by the school policy on prayer in place at that time:

> See You At The Pole, a nationally recognized day of student initiated, student-led prayer, will be tomorrow, Wednesday, September 27th. For the school district, this student gathering is treated like a student-led, non-curricular club that might meet before or after school. If you have students asking about whether or not they can have a See You At The Pole event, please send them to me to complete the proper approval process. Student participation at SYATP is limited to non-instructional time, meaning prior to the start of instruction at 8:55 AM or after the end of the instructional day of 4:05 PM. Participation should not cause students to be tardy to class.
>
> Per School Board policy FNAB(Local), district personnel shall not promote, lead, or participate in the meetings of non-curriculum-related student groups. Staff members are limited to serving as group monitors only for non-curricular groups. I also want to remind us that Board Policy prohibits staff members from leading students in prayer or praying with or in the presence of students. Our role would be to serve only as monitors of a student-led event. The information below can be found on page 24 of the KISD Employee Handbook. If you have any questions, please let me know. Thank you.

21. In addition to this staff-wide email, Principal Rounds sent a message directly to Staci Barber, specifically warning her not to pray in the presence of students:

> Per the email that I sent earlier today (attached), per district School Board policy, employees CANNOT pray with or in the presence of students. You cannot have a student group AND staff group both praying at the pole as this would be a violation of Board policy. See You At The Pole is a student-initiated event (not staff initiated) and student-let event (not staff led). **Even though it is before the school day, you are on campus visible to students in your role as an employee.**
>
> You cannot "ask students to attend" SYATP as that would be initiating and promoting the event. A student met with me today. He provided the appropriate request, and I approved his request to hold a student-led SYATP tomorrow. Mr. Thomas will be the faculty monitor.

(Emphasis added).

22. In her response to his email, Staci wrote: "Mr. Rounds, I didn't ask the students to attend. It is only for staff before students arrive just like we have done the past three years. . . . There will be no kids when we are out there."

23. Principal Round responded to that email with: "By 8:00 AM students are generally waiting at the front entry of the building," thereby implying that students being present at the building while the teachers prayed at the pole would render Staci Barber's conduct, praying at the pole, a violation of school policies.

24. According to Katy policy, the workday for teachers at Cardiff Junior High officially begins at 8:20 am.

25. Staci Barber met with one individual to pray at 8:05 am at the pole on September 27, 2023. Two more teachers joined her at the pole to pray at approximately 8:10 am. The prayer occurred outside of the workday and outside of her official duties.

26. While they were praying, Principal Rounds called them to step into the conference room.

27. Principal Rounds told them that Katy ISD does not allow them to pray in front of students because students could feel violated or offended by their conduct.

28. He said, "You can get together and pray together in private away from students, but you cannot do that in front of students."

29. Principal Rounds categorically forbade the teachers from praying in the presence of students. He acknowledged that they have the right to pray privately, such as during break time, before school, or after school, but stated that they could not pray in any location where students would be present, even if this praying occurred before the school day began.

30. Principal Rounds indicated that he was prohibiting them from praying publicly because there was a possibility that students would potentially join in with the prayer. After

questions from the teachers, he reiterated that it was considered impermissible for the teachers to pray in public where students might see their conduct or be influenced by it, even if this prayer occurred when the teachers were not on school time.

### c. Aftermath and Further Harassment

31. Shortly after this event, Principal Rounds sent Staci Barber an email asking her to meet him about her absences.

32. Staci confirmed with Principal Rounds in writing repeatedly that most of her absences were due to medical absences to see several medical specialists and one set of absences was to attend and provide medical care to a close family member and asked to be excused from a meeting, but Principal Rounds insisted on the meeting nonetheless.

33. Staci Barber called HR to express concern about this meeting in light of Principal Rounds' past conduct and was informed this meeting was mandatory.

34. Staci Barber met with Principal Rounds on October 19, 2023. Principal Rounds expressed concern, due to her medical absences, about Staci Barber's lack of dedication to Cardiff Junior High. In response Staci Barber mentioned that she had been experiencing significant personal illnesses.

35. When Principal Rounds asked how he could support Staci Barber to mitigate against future absences, Staci asked if she was the only teacher being called in for excessive absences.

36. In response to this question, Principal Rounds said she was being "antagonistic" and told her that if her attendance did not improve, he "might have to say, look, I really need somebody else that can be here."

37. FCA continues to face significant challenges from Principal Rounds; the group wanted to host a food drive and was denied permission when it sought to do so on its own, but

Principal Rounds then gave that permission when FCA partnered with a different organization.

### d. Plaintiff's Initial Demand Letter

38. Plaintiff's Counsel sent a letter on November 6, 2023, to Principal Rounds, demanding that this disciplinary action be corrected and Staci Barber not be punished for engaging in her First Amendment-protected prayer and religious activity that occurs outside of her contract time and when she is clearly acting outside of her official capacity.

39. In response, on January 17, 2024, KISD amended its religious policy as a result of its initial interactions with Plaintiff's Counsel. The former policy had included the language, "Employees may not promote, lead, or participate in religious activities of noncurriculum-related student groups. Employees may not pray with or in the presence of students. If a group of employees wishes to pray together, read the Bible, or engage in some other religious activity, they may do so as long as the activity does not interfere with their duties or the rights of other employees or students."

40. The new language of the policy reads: "**Employees may not promote, lead or participate in religious activities of noncurriculum-related student groups. However, nothing prevents a teacher or other employee from praying or reading religious materials during a time when students are not present.** If a group of employees wishes to pray together, read the Bible, or engage in some other religious activity, they may do so as long as the activity does not interfere with their duties or the rights of other employees or students." (Emphasis added.)

41. Because this new policy still significantly curtails the rights of teachers to participate in prayer, still implies that teachers cannot pray when students are present, and did not correct

8

Principal Rounds' statement that any prayer in public would be viewed as the official acts of the school, Counsel for Plaintiff requested further clarification of this amended language, asking the school to clarify that teachers have in fact a constitutional right to pray and engage in religious activity, when doing so in a private capacity, even when students are present, such as in an a SYATP prayer event that takes place before the start of school.

42. In addition to her ongoing desire to participate in the yearly SYATP event, Staci Barber also wishes to pray and engage in Bible study with other teachers before the school day begins on a regular basis, but because of Defendant Rounds's directives and the vagueness of the school's policy is no longer able to do so, as students might be present.

43. Specifically, until the 2023-24 school year, Staci Barber had met with a group of other teachers, approximately seven to eight people, to pray weekly before the school day began. The group had met in the school foyer, Staci's classroom, or other available spaces where it was possible students might be present. After the experience of SYATP Staci Barber ceased holding these meetings, with the expectation that her and the other participating teachers could face discipline for participating. Approximately four or five teachers expressed an interest to Staci Barber in resuming the prayer meetings, but she told them it was not safe to do so in light of Principal Rounds's directives.

44. Staci Barber also wishes to pray with FCA students or the students of the basketball team she coaches in certain circumstances, particularly if requested to do so by the students. Principal Rounds has instructed her that she is prohibited from ever praying with FCA students or the students of her basketball team, whether the prayer was requested or not. Specifically, he told her if and when a student ever wishes to pray, she needs to turn her

9

back, leave the room, or otherwise make clear that she is not in any way part of the student's prayer.

45. Plaintiff's Counsel sent a response email to Counsel for Katy ISD on Friday, January 24, 2024, a follow-up email on Monday, January 29, 2024, and a second follow-up email on Monday, February 5, 2024. None of these emails received any response.

46. KISD's policy regarding religious activity currently reads in full:

> The District is committed to the constitutional principle of separation of church and state. Board Policy makes it clear that employees will neither advance nor inhibit religion. *Employees may not promote, lead or participate in religious activities of noncurriculum-related student groups. However, nothing prevents a teacher or other employee from praying or reading religious materials during a time when students are not present.* If a group of employees wishes to pray together, read the Bible, or engage in some other religious activity, they may do so as long as the activity does not interfere with their duties or the rights of other employees or students.
>
> Off campus and outside the school day or school year, school District employees have the same right to religious expression as any other citizen. At the same time, employees are expected to refrain from using their position in the District to promote religious activities in the community.
>
> For example, if an employee teaches religious classes in their church, sponsors an FCA group or gives a religious devotional, the employee should do so as a citizen not as a teacher or employee of KISD.

47. Because Principal Rounds told Staci Barber that she could not pray where students can see her, and because the current policy still prohibits her from "participat[ing] in religious activities of noncurriculum-related student groups," Staci Barber continues to be in immanent fear that she will face disciplinary action for her constitutionally protected religious activity.

48. Specifically, Staci Barber continues to be barred from praying at the flagpole before the school day begins, despite her desire to do so.

49. Generally, Staci Barber apprehends that she will receive additional reprimands and other adverse conduct if she engages in **any** religious activity even in the vicinity of Cardiff Junior High, regardless of whether that activity occurs during work time or not.

IV.   CAUSES OF ACTION

### COUNT I

**Violation of Plaintiff's First Amendment Right to Freedom of Speech**

**(U.S. Const. amend. I; 42 U.S.C. § 1983)**

50. Plaintiff repeats, realleges, and incorporates by reference herein all preceding paragraphs as though fully set forth herein.

51. Pursuant to 42 U.S.C. § 1983, Staci Barber brings this claim against KISD for acting under color of state law to deprive her of her First Amendment right to free speech as guaranteed by the U.S. Constitution.

52. The private religious expression of government employees is fully protected under the First Amendment, which prohibits the government from "abridging the freedom of speech." This prohibition applies to state and local governments through the Fourteenth Amendment.

53. KISD's ban on demonstrative religious expression by Staci Barber violates the First Amendment by imposing a condition and requirement on employment inconsistent with her constitutional rights.

54. The Supreme Court has made it clear that Student and teacher prayer, including prayer at SYATP events, is undisputedly a protected form of speech that school officials may not ban. *Id.* at 247. "[T]he Constitution and the best of our traditions counsel mutual respect

and tolerance, not censorship and suppression, for religious and nonreligious views alike." *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2416 (2022).

55. Teachers possess a right to participate in public prayer events, exercising their First Amendment rights as citizens. Although a teacher could not pray while acting within his or her official duties, if an event occurs when a teacher is not acting in his or her official capacity, teachers have a right to participate because they participate and pray in their roles as citizens rather than in official capacities. *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. at 2425. In *Kennedy*, a school district disciplined and ultimately fired a football coach for praying on the field after weekly football games. The Court held, "Mr. Kennedy has demonstrated that his speech was private speech, not government speech" because when he prayed, "he was not instructing players, discussing strategy, encouraging better on-field performance, or engaged in any other speech the District paid him to produce as a coach." *Id.* The Court held that the "timing and circumstances of Mr. Kennedy's prayers confirm the point." *Id.* at 2425.

56. The Supreme Court expressly rejected the Ninth Circuit Court of Appeals' assertion that everything a teacher or coach says while on the clock in the workplace is government speech that is subject to government control, and also noted that such a misinterpretation would improperly allow a school to "fire a Muslim teacher simply for wearing a headscarf or prohibit a Christian aide from praying quietly over her lunch in the cafeteria." *Id.* "To hold differently would be to treat religious expression as second-class speech and eviscerate this Court's repeated promise that teachers do not 'shed their constitutional rights to freedom of speech or expression at the schoolhouse gate.'" *Id.* (citing *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969)). Of note, *Kennedy*

specifically indicated that a Christian teacher has a right to pray in a cafeteria, where students are typically present, and it would be necessarily and obviously improper to punish a teacher for such private religious activity.

57. The constitutional analysis of *Kennedy* applies with even stronger vigor when, as here, teachers pray before they are even on school time or in any way acting officially, but are simply present on school property.

58. When they do so on non-contract time, not acting in their official capacity, school employees possess a First Amendment right to engage in religious activity, including prayer, and cannot be prohibited from engaging in their religious expression.

59. Although Katy ISD has removed some egregious language from its policy, the current policy still limits employees in ways that violate the Free Speech Clause, still implying that they cannot pray when students are present and prohibiting them from "participating" in any religious activity. As evidenced by the conduct of Principal Rounds, this policy punishes teachers even for their off-duty religious speech, especially if any student group may be present.

## COUNT II

**Violation of Plaintiff's First Amendment Right to Free Exercise**

**(U.S. Const. amend. I; 42 U.S.C. § 1983)**

60. Plaintiff repeats, realleges, and incorporates by reference herein all preceding paragraphs as though fully set forth herein.

61. Pursuant to 42 U.S.C. § 1983, Staci Barber brings this claim against KISD for acting under color of state law to deprive her of her First Amendment right to the free exercise of religion as guaranteed by the U.S. Constitution.

62. The private religious expression of government employees is fully protected under the First Amendment, which prohibits the government from burdening the "free exercise of religion." This prohibition applies to state and local governments through the Fourteenth Amendment.

63. KISD's ban on demonstrative religious expression by Staci Barber violates the First Amendment by imposing a condition and requirement on employment inconsistent with her constitutional rights.

64. The Supreme Court has made it clear that "there is a crucial difference between government speech endorsing religion, which the Establishment Clause forbids, and private speech endorsing religion, which the Free Speech and Free Exercise Clauses protect." *Bd. of Educ. v. Mergens*, 496 U.S. 226, 250 (1990). Such religious activity by school teachers and coaches is protected by the First Amendment.

65. When they do so on non-contract time, not acting in their official capacity, school employees possess a First Amendment right to engage in religious activity, including prayer, and cannot be prohibited from engaging in their religious expression.

66. Although Katy ISD has removed some egregious language from its policy, the current policy still punishes teachers even for their off-duty religious speech, thereby violating the Free Exercise Clause.

## COUNT III

**Violation of Plaintiff's Due Process Rights**

**(U.S. Const. amend. XIV; 42 U.S.C. § 1983)**

67. Plaintiff repeats, realleges, and incorporates by reference herein all preceding paragraphs as though fully set forth herein.

68. The Fourteenth Amendment to the United States Constitution prohibits the Defendants from promulgating and employing vague and overbroad standards that allow for viewpoint discrimination in Defendants' handling of Plaintiff's religious activity.

69. The government may not regulate speech based on policies that permit arbitrary and discriminatory enforcement. *Heffron v. Int'l Soc. for Krishna Consciousness*, 452 U.S. 640, 649 (1981) (discussing "arbitrary application that this Court has condemned as inherently inconsistent with a valid time, place, and manner regulation because such discretion has the potential for becoming a means of suppressing a particular point of view.").

70. The government may not regulate speech based on a policy that causes persons of common intelligence to "guess at its meaning and differ as to its application." *Connally v. General Constr. Co.,* 269 U.S. 385, 391 (1926).

71. Current KISD policy, by not specifying the circumstances when an employee is prohibited from praying or specifying the circumstances when an employee's participation is prohibited, is unconstitutionally vague; it forces employees to guess as to what conduct is prohibited. The policy renders many acts of constitutionally protected religious activity uncertain, as it does not specify whether it is limited to the actions of employees in their official capacity.

### COUNT IV
### Violation of Plaintiff's Fourteenth Amendment Right to Equal Protection of the Law

**(U.S. Const. amend. XIV; 42U.S.C. § 1983)**

72. Plaintiff repeats, realleges, and incorporates by reference herein all preceding paragraphs as though fully set forth herein.

73. The Fourteenth Amendment to the United States Constitution guarantees Plaintiff the equal protection of the laws, which prohibits Defendants from treating the Plaintiff differently than similarly situated employees.

74. The government may not treat someone disparately as compared to similarly situated persons when such disparate treatment burdens a fundamental right, targets a suspect class, or has no rational basis.

75. By singling out Staci Barber for her conduct while not similarly disciplining other employees for their religious activities, such as the many staff members across campuses who participate in the religious activities of other student groups, KISD violated her constitutional right to equal treatment under the law.

## COUNT V

**Violation of Plaintiff's Texas Constitutional Rights to Freedom of Speech and Freedom of Religion**

(Tex. Const. art. I, § 8, § 6; 28 U.S.C. § 1367)

76. Plaintiff repeats, realleges, and incorporates by reference herein all preceding paragraphs as though fully set forth herein.

77. The Texas Constitution provides, "Every person shall be at liberty to speak, write or publish his opinions on any subject, being responsible for the abuse of that privilege; and no law shall ever be passed curtailing the liberty of speech or of the press.:" Tex. Const. Art. I, § 8. Likewise, the Texas Constitution provides that "No human authority ought, in any case whatever, to control or interfere with the rights of conscience in matters of religion." Tex. Const. Art. I, § 6. It is "the task of the courts—and all of government—to reaffirm that society must bear the speech of everyone, including speech that others find intolerable or offensive." *Lilith Fund for Reprod. Equity v. Dickson*, 662 S.W.3d 355, 361 (Tx. 2023).

78. Like the Federal Constitution, the Texas Constitution prohibits disciplining public employees for religious activity. *See Caleb v. Carranza*, 518 S.W.3d 537, 544 (Tex. App. 2014); *Price v. Tex. Alcoholic Bev. Comm'n*, 2014 Tex. App. LEXIS 7495, *13 (Tex. App. 2014).

79. By prohibiting Plaintiff from engaging in religious activity in the presence of students, as explained above, the Defendants violated her rights under the Texas Constitution and illegally substantially burdened her religious activity.

## COUNT VI

**Violation of Plaintiff's Right Under the Texas Religious Freedom Restoration Act**

(Tex. Civ. Prac. & Rem. Code § 110.003(a); 28 U.S.C. § 1367)

80. Plaintiff repeats, realleges, and incorporates by reference herein all preceding paragraphs as though fully set forth herein.

81. Under the Texas Religious Freedom Restoration Act ("TRFRA") government actors "may not substantially burden a person's free exercise of religion." Tex. Civ. Prac. & Rem. Code § 110.003(a).

82. If a law does substantially burden religion, it can only be permitted if it both "is in furtherance of a compelling governmental interest" and also "is the least restrictive means of furthering that interest." *Id.* § 110.003(b).

83. "TRFRA does not immunize religious conduct from government regulation; it requires the government to tread carefully and lightly when its actions substantially burden religious exercise." *Barr v. City of Sinton*, 295 S.W.3d 287, 289 (Tex. 2009).

84. By prohibiting its employees from engaging in any prayer where students might see or from participating in religious activity, Katy ISD violated TRFRA; no compelling interest

justifies a prohibition of employee prayer and any interest Katy ISD may have can be achieved without prohibiting teachers from engaging in religious activity.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests the following relief:

(A)   A declaratory judgment that Defendant's policy prohibiting Plaintiff's religious expression violates her rights under the First and Fourteenth Amendment:

(B)   A declaratory judgment that Defendants' conduct violated the Plaintiff's right to free speech and freedom of religion under the Texas Constitution and state law;

(C)   A preliminary and permanent injunction prohibiting the Defendants, their agents, officials, servants, employees, and any other persons acting in their behalf from disciplining Plaintiff or other similarly situated employees for their constitutionally-protected religious activity that occurs in their private capacity;

(D)   A preliminary and permanent injunction specifically requiring the Defendants, their agents, officials, servants, employees, and any other persons acting in their behalf to allow Plaintiff and any others with which she is associated to participate in *See You at the Pole* and any other prayer activity that occurs outside the workday where employees are not present in their official capacity;

(E)   A preliminary and permanent injunction requiring the Defendants, their agents, officials, servants, employees, and any other persons acting in their behalf to expunge any negative statement from the Plaintiff's record and redress any other negative consequences Plaintiff may have experienced as a result of their conduct toward her regarding her prayer;

(F) Compensatory or, in the alternative, nominal damages for the violation of Plaintiff's protected rights;

(G) Plaintiff's reasonable attorneys' fees, costs, and other costs and disbursements in this action pursuant to 42 U.S.C. § 1988; and

(H) All other further relief to which Plaintiff may be entitled.

/s/ Brett B. Stalcup
BRETT B. STALCUP
   (Tex. Bar. No. 19011800, S.D. Tex. Bar No. 3710517)
STALCUP LAW
3811 Turtle Creek Blvd. Suite 175
Dallas, Texas 75219
Telephone: (214) 219-1000
Facsimile: (214) 219-1003
Email: bstalcup@stalcuplaw.com


JAY ALAN SEKULOW**
   (D.C. Bar No. 496335)
JORDAN SEKULOW**
   (D.C. Bar No. 991680)
STUART J. ROTH**
   (D.C. Bar No. 475937)
CHRISTINA A. COMPAGNONE**
   (D.C. Bar No. 1657929)
GEOFFREY SURTEES**
   (KY Bar No. 89063)
NATHAN MOELKER**
   (VA Bar No. 98313)
AMERICAN CENTER FOR LAW AND JUSTICE
201 Maryland Avenue, NE
Washington, D.C. 20002
Telephone: (202) 546-8890
Facsimile: (202) 546-9309
Email: nmoelker@aclj.org

**Not admitted in this jurisdiction; application for pro hac vice admission forthcoming

## **Verification**

I, Staci Barber, declare as follows:

I. I am the Plaintiff in the present case, over eighteen years of age, a citizen of the United States of America, and a resident of Cypress, Texas.

2. I have personal knowledge of myself, my activities, and my intentions, including those set out in the foregoing Verified Complaint for Declaratory and Injunctive Relief; and if called on to testify I would competently testify as to the matters stated herein.

3. I verify that the language reproduced in this complaint of email messages I have received from Principal Rounds is a true and accurate reproduction of those messages.

4. I verify under penalty of perjury under the laws of the United States of America that the factual statements in this Complaint concerning myself, my activities, and my intentions arc true and correct pursuant to 28 U.S.C. § 1746.

Executed on ___March 15___, 2024

*Staci Barber*

Staci Barber