**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| STACI BARBER,<br><br>     Plaintiff,<br><br>vs.<br><br>KATY INDEPENDENT SCHOOL DISTRICT;<br>BRYAN SCOTT ROUNDS, Principal of Cardiff<br>Junior High, sued in his individual and official<br>capacities,<br><br>     Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No.: 4:24−cv−01004

**Oral Argument Requested**

## PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Plaintiff Staci Barber files this motion for a preliminary injunction to prevent the Defendants from taking adverse employment actions against her based on her legally protected right to engage in religious activity and prayer.[1] Staci Barber is likely to prevail on the merits in her case and is likely to establish the other factors necessary for a preliminary injunction.

Katy Independent School District ("Katy") has prohibited Staci Barber from praying in places where students might be present and prohibited her from praying at the school flagpole. By doing so, it continues to violate her constitutional right to religious expression. Because Staci Barber continues to suffer this infringement on her constitutional rights, Katy should be prevented

---

[1] Plaintiff's motion is based on Counts I and II of her Complaint: violations of the First Amendment's rights to free speech and the free exercise of religion. Plaintiff will address the remaining claims against Defendants later in this litigation.

from enforcing this unconstitutional policy and ordered to recognize Staci Barber's right to pray.

Plaintiff requests that this Court grant this motion and issue an injunction against the defendants, ordering them not to enforce their religion policy against Plaintiff Barber's constitutionally protected conduct and specifically ordering them to allow Plaintiff Barber to participate in *See You at the Pole*. This Motion is accompanied by three attached exhibits, constituting emails and Defendant Katy ISD's employee handbook, all mentioned, relied upon, and attested to in the Verified Complaint. It is also accompanied by a proposed order and a certificate of conference pursuant to Local Rule 7.1(D)(1). Plaintiff has also filed a motion for a hearing regarding this Motion.

## FACTUAL BACKGROUND

Staci Barber is a math teacher at Cardiff Junior High ("Cardiff") in Katy, Texas, and has taught there since 2015. Pl.'s Compl. ¶ 9. She is a Christian, and at the former school where she taught in Alief, Texas, Barber had been the staff sponsor of a campus Christian student group Students for Christ. *Id.* ¶ 11. When she started her employment at Cardiff she asked Defendant, Principal Scott Rounds, about starting a Cardiff campus chapter of Students for Christ. *Id.* He told her that Katy does not have religious clubs and that she was not allowed to participate in any religious clubs. *Id.* She asked Principal Rounds again over the years, whenever she saw Christian clubs at other Katy schools, but Principal Rounds would always tell her that no Christian clubs were permitted. *Id.* Finally, in the 2023-24 school year, several students came forward to start a Fellowship of Christian Athletes ("FCA") chapter at Cardiff. *Id.* ¶ 12. After an arduous questioning and application process by Principal Rounds, he eventually approved the chapter on September 26, 2023. *Id.* ¶ 19.

*See You at the Pole* ("SYATP") is an event held on the fourth Wednesday of September where millions of people around the country gather at school flagpoles to engage in prayer and religious activity before the school day begins. *Id.* ¶ 16. While student-led and student-initiated, concerned adults, including teachers, parents, and other individuals around the country, regularly participate in this prayer event to engage in prayer for students as they begin the school year. *Id.* Staci Barber has participated in this event and prayed at the pole for as long as she has been a teacher at Cardiff Junior High. *Id.* ¶ 17. At the beginning of the 2023-24 school year, Katy policy contained the following language:

> The District is committed to the constitutional principle of separation of church and state. Board Policy makes it clear that employees will neither advance nor inhibit religion. Employees may not pray with or in the presence of students. However, nothing prevents a teacher or other employee from praying or reading religious materials during a time when students are not present. If a group of employees wishes to pray together, read the Bible, or engage in some other religious activity, they may do so as long as the activity does not interfere with their duties or the rights of other employees or students.

Exhibit B. Principal Rounds allowed FCA students to meet and pray at the pole at 8:20 am on See You at the Pole Day, September 27, 2023. Pl.'s Compl. ¶ 19. The workday for teachers began at 8:20 am, but student classes did not start until 8:40 am. Exhibit A, at 21. Before Principal Rounds allowed students to gather and pray for SYATP, Staci sent an email to other staff members, inviting them to gather and pray together at the pole at 8:00 am, before they were on the clock for the school and before the prayer time for the FCA students. Pl.'s Compl. ¶ 19.

In response to Staci Barber's email, Principal Rounds sent out the following email to all staff, accompanied by the school policy on prayer in place at that time:

> See You At The Pole, a nationally recognized day of student initiated, student-led prayer, will be tomorrow, Wednesday, September 27th. For the school district, this student gathering is treated like a student-led, non-curricular club that might meet before or after school. If you have students asking about whether or not they can have a See You At The Pole event, please send them to me to complete the proper

approval process. Student participation at SYATP is limited to non-instructional time, meaning prior to the start of instruction at 8:55 AM or after the end of the instructional day of 4:05 PM. Participation should not cause students to be tardy to class.

Per School Board policy FNAB(Local), district personnel shall not promote, lead, or participate in the meetings of non-curriculum-related student groups. Staff members are limited to serving as group monitors only for non-curricular groups. I also want to remind us that Board Policy prohibits staff members from leading students in prayer or praying with or in the presence of students. Our role would be to serve only as monitors of a student-led event. The information below can be found on page 24 of the KISD Employee Handbook. If you have any questions, please let me know. Thank you.

Exhibit B. In addition to this staff-wide email prohibiting prayer, Principal Rounds sent a message directly to Staci Barber, specifically prohibiting her from praying:

Per the email that I sent earlier today (attached), per district School Board policy, employees CANNOT pray with or in the presence of students. You cannot have a student group AND staff group both praying at the pole as this would be a violation of Board policy. See You At The Pole is a student-initiated event (not staff initiated) and student-let event (not staff led). **Even though it is before the school day, you are on campus visible to students in your role as an employee.**

You cannot "ask students to attend" SYATP as that would be initiating and promoting the event. A student met with me today. He provided the appropriate request, and I approved his request to hold a student-led SYATP tomorrow. Mr. Thomas will be the faculty monitor.

Exhibit C (emphasis added).

According to Katy policy, the workday for teachers at Cardiff Junior High officially begins at 8:20 am. Exhibit A, at 21. Staci Barber met with one other teacher to pray at 8:05 am at the school flagpole on September 27, 2023, before the workday began. Pl.'s Compl. ¶ 24. Two more teachers joined her at the pole to pray at approximately 8:10 am. *Id.* While they were praying, Principal Rounds called them to step into the conference room. *Id.* ¶ 25. Principal Rounds told them that Katy ISD does not allow them to pray in front of students, because students could feel violated or offended by their conduct. *Id.* ¶ 28. Principal Rounds categorically forbade them from

praying in any location where students would be present, regardless of the fact that their prayer occurred before the workday began and before they were performing their official duties. *Id.*

When Plaintiff Barber threatened legal action, Katy ISD made a small amendment to its policy. The relevant language now reads:

> The District is committed to the constitutional principle of separation of church and state. Board Policy makes it clear that employees will neither advance nor inhibit religion. **Employees may not promote, lead or participate in religious activities of noncurriculum-related student groups. However, nothing prevents a teacher or other employee from praying or reading religious materials during a time when students are not present.** If a group of employees wishes to pray together, read the Bible, or engage in some other religious activity, they may do so as long as the activity does not interfere with their duties or the rights of other employees or students.

> Off campus and outside the school day or school year, school District employees have the same right to religious expression as any other citizen. At the same time, employees are expected to refrain from using their position in the District to promote religious activities in the community.

> For example, if an employee teaches religious classes in their church, sponsors an FCA group or gives a religious devotional, the employee should do so as a citizen not as a teacher or employee of KISD.

Exhibit A, at 26-27 (emphasis added). Because Principal Rounds told Staci Barber that she could not pray where students can see her, and because the current policy still prohibits her from "participat[ing] in religious activities of noncurriculum-related student groups," Staci Barber continues to be in imminent fear that she will face disciplinary action for her constitutionally-protected religious activity. Pl.'s Compl. ¶ 40.

Specifically, Principal Rounds told her in his email that SYATP is "treated like" a student group religious activity, Exhibit B, and accordingly, the current policy still bars her from praying at the flagpole before the school day. Staci Barber continues to be barred from praying at the flagpole before the school day begins, whether for a specific event or not, despite her profound religious desire to do so, because, as Principal Rounds made clear in his email, Exhibit B, prayer

at the pole is inherently considered a noncurriculum-related student group. The school's policy prevents Staci from participating in the yearly SYATP event, but it also prevents her from ever praying in the presence of students, praying at the pole, or engaging in any other kind of religious activity where students may see her. *Id.* ¶ 41-43.

Plaintiff Barber seeks this injunction because, despite Katy ISD's purported attempt to correct its policy, she is still unable to engage in any prayer in the presence of students or to pray publicly, even off the clock, when she is on school grounds. Her religious activity is substantially curtailed by the policy's prohibition of participation in religious activities, which would include SYATP, and its implicit prohibition of prayer in the presence of students.

## ARGUMENT

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits; that he is likely to suffer irreparable harm in the absence of preliminary relief; that the balance of equities tips in his favor; and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). "[N]one of the four prerequisites has a fixed quantitative value. Rather, a sliding scale is utilized, which takes into account the intensity of each in a given calculus." *Mock v. Garland*, 75 F.4th 563, 587 (5th Cir. 2023) (quoting *Texas v. Seatrain International, S. A.*, 518 F.2d 175, 180 (5th Cir. 1975)).

"Content-based prohibitions, enforced by severe criminal penalties, have the constant potential to be a repressive force in the lives and thoughts of a free people. To guard against that threat the Constitution demands that content-based restrictions on speech be presumed invalid, . . . and that the Government bear the burden of showing their constitutionality." *Ashcroft v. ACLU*, 542 U.S. 656, 660 (2004) (citations omitted); *see United States v. Playboy Entm't Group, Inc.*, 529 U.S. 803, 816 (2000) ("When the Government restricts speech, the Government bears the burden

of proving the constitutionality of its actions.") (citations omitted).

I.      **Plaintiff Barber Is Likely to Succeed on the Merits in Challenging Katy's Policy Prohibiting Employees from Participating in Religious Activities.**

Katy ISD policy, particularly as enforced by Principal Rounds, prohibits Plaintiff Barber from in any way participating in the religious activities of student groups, whether acting in her official capacity or not, and still implicitly prohibits her from engaging in religious activity, such as prayer, if she does so when students may be present. Regardless of whether she is on the clock or not or acting in her official role or not, she is restricted in her ability to engage in prayer or religious activity. Per the directives of Principal Rounds, Staci Barber remains unable to participate in SYATP or pray in any other context where students might see her, as she has been told that when she engages in such prayer, "[e]ven though it is before the school day, you are on campus visible to students in your role as an employee." Exhibit C. This policy violates her fundamental rights to freedom of speech and religion, and she is likely to succeed on the merits in her attack on that policy, sufficient to support a preliminary injunction against Katy ISD from taking any further action against her for her religious activity.

It is well established that public school employees, like students, do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969); *Morse v. Frederick*, 551 U.S. 393, 403 (2007) ("First Amendment rights, applied in light of the special characteristics of the school environment, are available to teachers and students"). Plaintiff Barber has the clear constitutionally protected rights to free speech and religious exercise, rights that of necessity incorporate a right to pray. "In the First Amendment context, the likelihood of success on the merits is the linchpin of the preliminary injunction analysis." *Sindicato Puertorriqueño de Trabajadores v. Fortuño*, 699 F.3d 1, 10 (1st Cir 2012). Plaintiff Barber's speech receives fundamental protection as core speech

on the social issue of religion. The Supreme Court "has frequently reaffirmed that speech on public issues is entitled to special protection," *Connick v. Myers*, 461 U.S. 138, 145 (1983), and that "it is a prized American privilege to speak one's mind." *New York Times Co. v. Sullivan*, 376 U.S. 254, 269 (1964); *see also Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205*, 391 U.S. 563, 570 (1968) ("unequivocally" rejecting the claim that a public employee could be disciplined for comments on matters of public concern "if sufficiently critical in tone").

"It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995) (citing *Police Dept. of Chicago v. Mosley,* 408 U.S. 92, 96 (1972)). "Discrimination against speech because of its message is presumed to be unconstitutional." *Id.* (citing *Turner Broadcasting System, Inc. v. FCC,* 512 U.S. 622, 641-43 (1994)). It is well settled that "as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out." *Mercado-Berrios v. Cancel-Alegria*, 611 F.3d 18, 25-26 (1st Cir. 2010) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)) (internal quotation marks and citations omitted).

The protections for the right to speak freely on public issues do not disappear, merely because someone becomes a public employee. "The theory that public employment which may be denied altogether may be subjected to any conditions regardless of how unreasonable, has been uniformly rejected." *Pickering*, 391 U.S. at 568 (quoting *Keyishian v. Bd. of Regents*, 385 U.S. 589, 605-06 (1967)). Public employees do not lose their First Amendment rights to speak simply because they are public employees. *San Diego v. Roe*, 543 U.S. 77, 82 (2004) (per curiam) ("Were [public employees] not able to speak on [the operation of their employers], the community would be deprived of informed opinions on important public issues. The interest at stake is as much the

public's interest in receiving informed opinion as it is the employee's own right to disseminate it.") (citation omitted).

The Supreme Court recently articulated a two-step inquiry to determine whether an adverse employment action against a public employee violates the First Amendments to free speech and free exercise. *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2423 (2022). First, the court must make "a threshold inquiry into the nature of the speech at issue. If a public employee speaks 'pursuant to [his or her] official duties,' this Court has said the Free Speech Clause generally will not shield the individual." *Id.* Second, if an employee "'speaks as a citizen addressing a matter of public concern,'" then the "courts should attempt to engage in 'a delicate balancing of the competing interests surrounding the speech and its consequences.'" *Id.* (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 423 (2006). By engaging in private prayer before the school day began, Staci Barber spoke as a citizen, not as employee. And the competing interests in this matter weigh in favor of the protection of her religious speech.

A. **Plaintiff Barber's prayer at the pole was a statement made as a citizen concerning matters that concern the public, not a statement made as employee.**

This circuit has provided several non-exclusive factors for the inquiry into whether an employee spoke as a private citizen: the courts consider "factors such as job descriptions, whether the employee communicated with coworkers or with supervisors, whether the speech resulted from special knowledge gained as an employee, and whether the speech was directed internally or externally." *Johnson v. Halstead*, 916 F.3d 410, 421 (5th Cir. 2018) (citing *Rogers v. City of Yoakum*, 660 F. App'x 279, 283 (5th Cir. 2016)). The "key" factor is "whether the speech was directed internally within the organization or externally to the public." *Rushing v. Miss. Dep't of Child Prot. Servs.*, 2022 U.S. App. LEXIS 7797, *7 (5th Cir. 2022). "An employee who speaks to listeners outside the employee's organization about issues unrelated to her job duties generally

speaks as a citizen." *Id.*

Plaintiff Barber spoke on a matter of public concern. The Supreme Court has defined "a matter of public concern" as one that "relat[es] to any matter of political, social, or other concern to the community." *Connick*, 461 U.S. at 146. "Speech involves matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Lane v. Franks*, 573 U.S. 228, 240 (2014) (quotations and citation omitted). Prayer and religious activity, particularly in this context, i.e., prayer outside a school building on behalf of that school for the upcoming school year, is a matter of public concern. *See Kennedy*, 142 S. Ct. at 2424. Because her speech concerns religion, it is "unquestionably of inherent public concern." *Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954, 966 (9th Cir. 2011); *see also Tucker v. State of Cal. Dep't of Educ.*, 97 F.3d 1204, 1210 (9th Cir. 1996) ("[T]he speech is religious expression and it is obviously of public concern."); *see also Shatkin v. Univ. of Tex. at Arlington*, 2009 U.S. Dist. LEXIS 18018, *14 (N.D. Tex. 2009) (noting that prayer "certainly can be of public concern").

All the factors used to determine whether Plaintiff Barber spoke pursuant to her official responsibilities weigh heavily in her favor. By praying at the school flagpole before the school day began, Plaintiff Barber was speaking as a concerned citizen and acting in a way a citizen could and would—not according to her employment. This prayer was clearly offered not in Staci Barber's capacity as a government actor, but in her capacity as a private citizen. "The critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Lane*, 573 U.S. at 240. Any member of the public could have engaged in the same activity.

The Supreme Court's analysis in *Kennedy* of a similar matter should be dispositive here. 142 S. Ct. at 2425. In *Kennedy,* a school district disciplined and ultimately fired a football coach for praying on the field after weekly football games. In examining whether Coach Kennedy's speech was protected under the First Amendment, the Court considered whether the speech (his prayers) took place within the scope of his official duties as a coach. *Id.* at 2424. The Court concluded, "Mr. Kennedy has demonstrated that his speech was private speech, not government speech" because when he prayed, "he was not instructing players, discussing strategy, encouraging better on-field performance, or engaged in any other speech the District paid him to produce as a coach." *Id.* As the Court explained further,

> During the postgame period when these prayers occurred, coaches were free to attend briefly to personal matters—everything from checking sports scores on their phones to greeting friends and family in the stands. We find it unlikely that Mr. Kennedy was fulfilling a responsibility imposed by his employment by praying during a period in which the District has acknowledged that its coaching staff was free to engage in all manner of private speech. That Mr. Kennedy offered his prayers when students were engaged in other activities like singing the school fight song further suggests that those prayers were not delivered as an address to the team, but instead in his capacity as a private citizen. Nor is it dispositive that Mr. Kennedy's prayers took place "within the office" environment—here, on the field of play. *Garcetti*, 547 U.S., at 421. Instead, what matters is whether Mr. Kennedy offered his prayers while acting within the scope of his duties as a coach. And taken together, both the substance of Mr. Kennedy's speech and the circumstances surrounding it point to the conclusion that he did not.

*Id.* The Court explained that the mere fact that an employee is on duty at the time of his/her speech does not categorically eliminate the First Amendment's protections. *Id.*

The Court categorically rejected the Ninth Circuit Court of Appeals' assertion that everything a teacher or coach says in the workplace is government speech that is subject to government control. Such a misinterpretation would improperly allow a school to "fire a Muslim teacher simply for wearing a headscarf or prohibit a Christian aide from praying quietly over her lunch in the cafeteria." *Id.* The Court also rejected the school district's claim that the First

Amendment does not permit "an employee, while still on duty, to engage in religious conduct." *Id.* at 2424. Coach Kennedy's conduct did not "involve leading prayers with the team or before any other captive audience," *Id.* at 2422, yet the school district still sought to regulate only his conduct.

During the time that Coach Kennedy prayed on the field, other members of the coaching staff were permitted to do things like visit with friends or take personal phone calls. The school district made no attempt to regulate any of the conduct by other members of the coaching staff and, as such, it was clear that Coach Kennedy was acting in his personal capacity. *Id.* at 2423. Most crucially here, and what renders this case an even stronger one than the decision in *Kennedy*, Staci Barber was not being paid to perform the speech she engaged in by praying at the pole; it occurred completely outside the scope of her work responsibilities. According to official school policy, Staci Barber's time of employment begins at 8:20 am. Exhibit A, at 21. Her prayer thus occurred well outside the workday.

Nothing about Staci Barber's "ordinary job responsibilities" required her to pray at the pole. That is abundantly confirmed by Katy's own correspondence, which purported to prohibit Staci Barber from engaging in this prayer, whether on duty or off it. *See Dahlia v. Rodriguez*, 735 F.3d 1060, 1075 (9th Cir. 2013) ("[W]hen a public employee speaks in direct contravention to his supervisor's orders, that speech may often fall outside of the speaker's professional duties. Indeed, the fact that an employee is threatened or harassed by his superiors for engaging in a particular type of speech provides strong evidence that the act of speech was not, as a 'practical' matter, within the employee's job duties."). Here, the policy at issue forbids Staci Barber from praying where students might see her; it is thus particularly clear that her prayer was not in any practical sense within her job duties, but action that she took as a citizen.

Staci Barber's prayer was not made through the chain of command or aimed at others within her place of employment. This lack of internal communication is "key." *Rushing*, 2022 U.S. App. LEXIS at *7. Although prayer is perhaps not directed to the public in a traditional sense, the prayer here was not targeted at any employer or made as an internal communication. It was made directly to Staci Barber's God in her capacity as a member of the public. The prayer did not reference any special knowledge that she had received from her employment and did not give anyone the impression that it occurred with the official permission of Katy ISD. The fact that people would have known that she was an employee does not mean she was acting officially. Merely "identifying oneself as a public employee does not forfeit one's ability to claim First Amendment protections." *Graziosi v. City of Greenville Miss.*, 775 F.3d 731, 737 (5th Cir. 2015).

Most importantly, there is an obvious so-called citizen analogue to Plaintiff's speech. *See Garcetti*, 547 U.S. at 423 (holding that public-employee speech, activities such as "writing a letter to a local newspaper" or "discussing politics with a co-worker" is protected when it is "the kind of activity engaged in by citizens who do not work for the government"). Any citizen of the community could likewise choose to publicly pray before the school day begins on behalf of the students there. *See, e.g.*, *Connick*, 461 U.S. at 143 (stressing that the Supreme Court's "repeated emphasis in *Pickering* on the right of a public employee 'as a citizen, in commenting upon matters of public concern,' was not accidental") (quoting *Pickering*, 391 U.S. at 568); *Gillum v. City of Kerrville*, 3 F.3d 117, 120-21 (5th Cir. 1993) ("We do not focus on the inherent 'importance' of the subject matter of the speech, but on the extent to which the terminated employee spoke as a citizen or  employee."). Many parents and other members of the community do in fact participate in SYATP, joining with students at the flagpole before the school day begins in order to pray for their students.

In short, just as the plaintiff in *Kennedy* exercised a constitutionally protected right to engage in religious activity when he prayed at the 50-yard line, Plaintiff Barber exercised her constitutionally protected right when she prayed at the flagpole before the school day began. Any possible justification that might have supported the school's discipline of the coach in *Kennedy*, such as the fact that his speech occurred while he was on the clock, is not present here. Staci Barber's prayer was clearly outside the official hours of her employment. Because Stacie Barber's religious expression is clearly outside the scope of her employment duties, she spoke as a citizen, not a public employee. Her speech therefore "lies at the heart of the First Amendment." *Lane*, 134 S. Ct. at 2377.

**B.      The *Pickering* balancing test favors Plaintiff Barber.**

Under well-established precedent, if a court finds the employee has made statements that are within the scope of First Amendment protection, the court must then "balance . . . the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the [school district], as an employer, in promoting the efficiency of the public services it performs through its employees." *Graziosi*, 775 F.3d at 740 (5th Cir. 2015) (citing *Pickering*, 391 U.S. at 568).

Staci Barber's speech did not interfere with her ability to perform her job duties in any way, as it occurred outside the scope of those duties. In addition to Plaintiff's interest in her own speech, the public has a non-trivial interest in the public and religious statement Plaintiff Barber sought to convey. As the Supreme Court recently reiterated, "the Constitution and the best of our traditions   counsel mutual respect and tolerance, not censorship and suppression, for religious and nonreligious views alike." *Kennedy*, 142 S. Ct. at 2416.

There can be no concern over the "efficiency of the public services" with respect to Plaintiff

Barber's speech. Her prayer was outside the scope of her duties and before the beginning of the workday. She was prepared to, and did, begin her employment when required to when the workday began at 8:20, after this period of prayer. Katy ISD cannot point to any way in which off-duty prayer before the workday begins would have any detrimental effect on the performance of Staci Barber's employment tasks. "As the Supreme Court has made clear, . . . the relevant issue is not the weight of the governmental interest considered in abstract terms; we look instead to how the speech at issue affects the government's interest in providing services efficiently." *Kinney v. Weaver*, 367 F.3d 337, 362 (5th Cir. 2004) (en banc) (emphasis in original). For a court to find that the government's interest in a "smoothly-running" workplace "outweighs" an employee's First Amendment rights, "defendants must demonstrate actual, material and substantial disruption, or reasonable predictions of disruption in the workplace." *Robinson v. York*, 566 F.3d 817, 824 (9th Cir. 2009) (internal quotation marks omitted).

In attempting to support balancing the interests in its favor, the school in *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. at 2423, attempted to justify its similar policy on the basis of the Establishment Clause. The Supreme Court left no doubt in categorically rejecting such an argument:

> The only added twist here is the District's suggestion not only that it may prohibit teachers from engaging in any demonstrative religious activity, but that it must do so in order to conform to the Constitution.
>
> Such a rule would be a sure sign that our Establishment Clause jurisprudence had gone off the rails. In the name of protecting religious liberty, the District would have us suppress it. Rather than respect the First Amendment's double protection for religious expression, it would have us preference secular activity. Not only could schools fire teachers for praying quietly over their lunch, for wearing a yarmulke to school, or for offering a midday prayer during a break before practice. Under the District's rule, a school would be required to do so. It is a rule that would defy this Court's traditional understanding that permitting private speech is not the same thing as coercing others to participate in it.

*Id.* at 2431. Thus, the Supreme Court in *Kennedy* categorically rejected the notion that public school employees can be prohibited from praying publicly. The Establishment Clause contains no such requirement; on the contrary, the Constitution protects the rights of public school employes to engage in religious speech, even before others, when that speech is not in their official capacity. Likewise here, there is no Establishment Clause justification for infringing on the rights of public-school employees to engage in religious expression.

Indeed, the only arguable "disruption" here is the direct result of Katy ISD's own discrimination against Staci Barber by prohibiting her religious expression and prayer. Disruption that results from unconstitutional discrimination cannot, of course, constitute an adequate justification for any employment policy. *See Nichol v. ARIN Intermediate Unit 28*, 268 F. Supp. 2d 536, 560 (W.D. Pa. 2003) ("Plaintiff's wearing her cross has not been disruptive, controversial (until banned by [her employer]), distracting or confusing to students, nor has it caused any dissension or problems in the working or school environment.").[2]

## II.    Plaintiff Barber Will Suffer Irreparable Harm Absent Relief.

Plaintiff Barber will experience "immediate and irreparable harm in the absence of preliminary relief." *Winter*, 555 U.S. at 20. Irreparable harm is easily satisfied in cases where a plaintiff would otherwise be prevented from exercising his constitutional right to free speech. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see also Maceira v. Pagan*, 649 F.2d

---

[2] It should be noted that the school district's policy does not comport with current Establishment Clause jurisprudence. The statement that "Board Policy makes it clear that employees will neither advance nor inhibit religion" is based squarely on language from *Lemon v. Kurtzman*, 403 U.S. 602, 612 (1971). *Lemon*, however, is now a thing of the past. *See Freedom from Religion Found., Inc. v. Mack*, 49 F.4th 941, 954 n.20 (5th Cir. 2022) (noting that *Lemon*'s "long Night of the Living Dead, *Lamb's Chapel v. Moriches Union Free Sch. Dist.*, 508 U.S. 384, 398 (1993) (Scalia, J., concurring in the judgment), is now over, *Kennedy*, 142 S. Ct. at 2427.").

8, 18 (1st Cir. 1981) ("It is well established that the loss of First Amendment freedoms constitutes irreparable injury."). When plaintiffs seek to enjoin restraints on their free speech, their likelihood of success on the merits is generally dispositive of their entitlement to an injunction. *See also* 11A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice and Procedure* § 2948.1 (2d ed. 1995) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary."). Because Staci Barber continues to suffer the loss of her First Amendment rights due to the District's discriminatory actions, she will "unquestionably" suffer irreparable injury without a preliminary injunction.

Staci Barber has been warned that any future actions of this sort may result in similar consequences and has been threatened against engaging again in religious activity. She has been repeatedly berated for her conduct and treated differently from other employees. The application of the current policy to her prevents her from praying in public in any context, whether at SYATP or in any other context where she may wish to pray publicly. Under the policy of Katy ISD, she still is restricted in her ability to pray in the presence of students or participate in religious activities. Such loss of First Amendment freedoms has a chilling effect for Plaintiff Barber and other teachers and cannot be compensated simply by money damages. Staci Barber cannot be made whole through monetary remedies. *See, e.g., Scott v. Roberts*, 612 F.3d 1279, 1295 (11th Cir. 2010) ("chilled free speech . . . because of [its] intangible nature, [can]not be compensated for by monetary damages"). A violation of First Amendment freedoms "carries with it the distinct risk that other employees may be deterred from protecting their rights under the [law]." *Garcia v. Lawn*, 805 F.2d 1400, 1405 (9th Cir. 1986) (internal citation omitted). Accordingly, she will be irreparably harmed if Defendants are not enjoined from engaging in similar conduct in the future.

III.    **The Balance of the Equities Favors Preliminary Injunctive Relief.**

The balancing of the equities favors Plaintiff Barber. Granting preliminary injunctive relief would ensure that Plaintiff Barber does not suffer retaliation and chilling of her First Amendment rights during the pendency of this lawsuit as a result of the enforcement of Katy ISD's unconstitutional policy. By contrast, Defendants will suffer no harm by an order prohibiting them from disciplining Plaintiff Barber for her prayer until the Court can rule on the serious constitutional and statutory issues raised in her complaint. Given the non-disruptive, out-of-work nature of Plaintiff's speech, granting the preliminary injunction will not harm Defendants.

Defendants cannot claim an interest in continued enforcement of an unconstitutional practice of prohibiting the prayer of its employees. See *ACLU v. Ashcroft*, 322 F.3d 240, 251 n.11 (3d Cir. 2003). "[I]t is clear that it would not be equitable or in the public's interest to allow the state . . . to violate the requirements of federal law, especially when there are no adequate remedies available." *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013). In the absence of a compelling state interest in regulating Plaintiff's speech, the balance of the equities strongly favors the preservation of Plaintiff's constitutional free speech and associational rights.

IV.    **The Injunction Is in the Public Interest.**

Finally, the public interest also supports granting preliminary injunctive relief. The Fifth Circuit has consistently held that "injunctions protecting First Amendment freedoms are always in the public interest." *Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013); *see also Opulent Life Church v. City of Holly Springs Miss.*, 697 F.3d 279, 298 (5th Cir. 2012) (same); *Ingebretsen ex rel. Ingebretsen v. Jackson Pub. Sch. Dist.*, 88 F.3d 274, 280 (5th Cir. 1996) (holding that where a law violates the First Amendment "the public interest was not disserved by an injunction preventing its implementation."). "Surely, upholding constitutional

rights serves the public interest." *Newsom Albemarle Cnty. Sch. Bd*., 354 F.3d 249, 261 (4th Cir. 2003); *see also Carey v. Klutznick*, 637 F.2d 834, 839 (2d Cir. 1980).

This policy impermissibly censors protected speech about an issue—religious activity—that is central to the protections of the First Amendment. Everyone loses when the government silences the ability of teachers to exercise their right to pray. It is inherently in the public interest to prevent Defendants from disciplining Staci Barber for her protected religious activity.

## CONCLUSION

For these reasons, Plaintiff Staci Barber respectfully requests that the Court issue a preliminary injunction preventing Defendants from taking any adverse employment actions against her based on her constitutionally-protected religious activity.

Dated:  April 16, 2024

Respectfully submitted,

BRETT B. STALCUP
(Tex. Bar. No. 19011800, S.D. Tex. Bar No.
    3710517)
STALCUP LAW
3811 Turtle Creek Blvd. Suite 175
Dallas, Texas 75219
Telephone: (214) 219-1000
Facsimile: (214) 219-1003
Email: bstalcup@stalcuplaw.com

JORDAN SEKULOW**
    (D.C. Bar No. 991680)
STUART J. ROTH**
    (D.C. Bar No. 475937)
CHRISTINA A. COMPAGNONE**
    (D.C. Bar No. 1657929)
GEOFFREY SURTEES**
    (KY Bar No. 89063)
/s/ Nathan J. Moelker
NATHAN J. MOELKER*

(VA Bar No. 98313)
AMERICAN CENTER FOR LAW AND JUSTICE
201 Maryland Avenue, NE
Washington, D.C.  20002
Telephone: (202) 546-8890
Facsimile: (202) 546-9309
Email: nmoelker@aclj.org``

**COUNSEL FOR PLAINTIFF**

*Admitted Pro Hac Vice
**Not admitted in this jurisdiction; application for pro hac vice admission forthcoming

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 7.1(D), Counsel for movant has conferred with Counsel for Defendants. Counsel cannot agree about the disposition of the motion.

/s/ Nathan J. Moelker
NATHAN J. MOELKER
(VA Bar No. 98313)

Certified this April 16, 2024, by counsel for movant.

## CERTIFICATE OF SERVICE

I hereby affirm that a true and correct copy of the foregoing document was served upon all counsel of record through the Court's e-filing system on April 16, 2024.

/s/ Nathan J. Moelker
NATHAN J. MOELKER
(VA Bar No. 98313)