UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| STACI BARBER, | § |
| | § |
| Plaintiff, | § |
| | § |
| VS. | § CIVIL ACTION NO. 4:24-CV-01004 |
| | § |
| KATY INDEPENDENT SCHOOL DISTRICT, *et al.*, | § |
| | § |
| Defendants. | § |

## **ORDER**

Before the Court are Defendants Katy Independent School District and Bryan Scott Rounds' (collectively, "Defendants") Motion to Dismiss (Doc. #10), Plaintiff Staci Barber's ("Plaintiff") Response (Doc. #19), Defendants' Reply (Doc. #21), and Plaintiff's Surreply (Doc. #24). Having considered the parties' arguments and the applicable legal authority, the Court grants the Motion to Dismiss in part.

### I.   Background

#### a.   Factual Background

Plaintiff is a teacher at Cardiff Junior High School ("Cardiff") in Katy, Texas, and has taught there since 2015.[1] Doc. #1 ¶ 15. Plaintiff is also a Christian who regularly engages in prayer and other expressions of her faith. *Id.* ¶ 10. Indeed, prior to the 2023–2024 school year, Plaintiff hosted a weekly Bible study with other teachers at Cardiff before the school day began.

---

[1] The Court outlined the factual background of this case in detail in its May 28, 2024 Order denying Plaintiff's Motion for Preliminary Injunction, much of which has been restated herein. *See* Doc. #25 at 1–3.

*Id.* ¶ 43.

"See You at the Pole" ("SYATP") is an annual event held on the fourth Wednesday of September wherein students and others across the country gather at school flagpoles to engage in prayer. *Id.* ¶ 16. Plaintiff alleges that, until the events giving rise to this lawsuit, she had participated in SYATP without issue since she began teaching at Cardiff in 2015. *Id.* ¶ 17. Thus, on September 25, 2023, Plaintiff sent an email to staff at Cardiff inviting them to participate in SYATP on September 27, 2023, from 8:00 AM to 8:15 AM. Doc. #17, Ex. 1 at 26. On September 26, 2023, Cardiff's Principal, Defendant Bryan Scott Rounds ("Principal Rounds"), approved a student's request to use school facilities for a noncurriculum-related group so that a group of students could participate in SYATP. *Id.* at 8. The student group was permitted to gather at the flagpole before the school day started on September 27, 2023, from 8:00 AM to 8:40 AM. *Id.*

Also on September 26, 2023, Principal Rounds sent an email to staff informing them that SYATP, "a nationally recognized day of student initiated, student-led prayer," would occur on September 27, 2023, and "[f]or the school district, this student gathering is treated like a student-led, non-curricular club that might meet before or after school." Doc. #1 ¶ 20; Doc. #10, Ex. 1 at 2. Principal Rounds' email also stated that "[p]er School Board policy . . . , district personnel shall not promote, lead, or participate in the meetings of non-curriculum-related student groups. . . . I also want to remind us that Board Policy prohibits staff members from leading students in prayer or praying with or in the presence of students." Doc. #10, Ex. 1 at 2. The email attached a portion of Defendant Katy Independent School District's ("KISD") Employee Handbook titled "Religion in the Schools," which stated in relevant part:

> The District is committed to the constitutional principle of separation of church and state. Board Policy makes it clear that employees will neither advance nor inhibit religion. *Employees may not pray with or in the presence of students.* However, nothing prevents a teacher or other employee from praying or reading religious

2

materials during a time when students are not present. If a group of employees wishes to pray together, read the Bible, or engage in some other religious activity, they may do so as long as the activity does not interfere with their duties or the rights of other employees or students.

*Id.*; *see also* Doc. #1 ¶¶ 18–20 (emphasis added).

The same day he sent the staff email, Principal Rounds responded to Plaintiff's September 25, 2023 email and informed her that, per KISD's policy, employees cannot pray "with or in the presence of students," and thus there cannot be a student and staff group both praying at the pole at the same time, even if it is before school hours. Doc. #17, Ex. 1 at 24–25; Doc. #1 ¶ 21. Plaintiff responded that students would not be present at the same time as staff. Doc. #1 ¶ 22.

On September 27, 2023, Plaintiff and a few other teachers gathered at the school flagpole at about 8:05 AM to pray for SYATP. *Id.* ¶ 25. Though students had not yet shown up to participate in SYATP, they had reserved the spot from 8:00 AM to 8:40 AM. While Plaintiff and the other teachers were praying for SYATP, Principal Rounds called them into a conference room. *Id.* ¶ 26. Principal Rounds told Plaintiff that she was not allowed to participate in SYATP or pray in the presence of other students but was free to do so privately. *Id.* ¶ 28.

On November 6, 2023, Plaintiff's counsel sent a demand letter to Principal Rounds demanding that she not be punished for her religious activity outside of her contracted work hours. *Id.* ¶ 38. On January 17, 2024, KISD amended the language regarding "Religion in the Schools" in its Employee Handbook, which now reads:

> The District is committed to the constitutional principle of separation of church and state. Board Policy makes it clear that employees will neither advance nor inhibit religion. *Employees may not promote, lead or participate in religious activities of noncurriculum-related student groups. However, nothing prevents a teacher or other employee from praying or reading religious materials during a time when students are not present.* If a group of employees wishes to pray together, read the Bible, or engage in some other religious activity, they may do so as long as the activity does not interfere with their duties or the rights of other employees or students.

3

Doc. #8, Ex. 2 at 27–28 (emphasis added); Doc. #1 ¶ 40. After the SYATP event, Plaintiff alleges that she has ceased her Bible study group out of fear of disciplinary action should she continue engaging in religious activity at Cardiff. Doc. #1 ¶ 18.

### b. Procedural History

On March 19, 2024, Plaintiff filed her Complaint against KISD and Principal Rounds, asserting several violations of the United States Constitution pursuant to 42 U.S.C. § 1983 ("Section 1983"). Doc. #1. Specifically, Plaintiff alleges Defendants violated the First Amendment Free Speech Clause and Free Exercise Clause, as well as the Fourteenth Amendment Due Process Clause and Equal Protection Clause. *Id.* ¶¶ 50–75. Plaintiff also asserts free speech and free exercise claims under the Texas Constitution, and claims Defendants violated her rights under the Texas Religious Freedom Restoration Act ("TRFRA"). *Id.* ¶¶ 76–84. The Complaint also seeks a declaratory judgment, a preliminary and permanent injunction, and damages. *Id.* at 18–20.

On April 16, 2024, Plaintiff filed a Motion for Preliminary Injunction, based only on her First Amendment claims. Doc. #8. On April 18, 2024, Defendants moved to dismiss all of Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6). Doc. #10. Principal Rounds also asserted qualified immunity. *Id.* The Court denied the Motion for Preliminary Injunction on May 28, 2024, determining that Plaintiff had not shown a substantial threat of irreparable harm absent injunctive relief. Doc. #25. The Court now turns to Defendants' Motion to Dismiss.

## II. Legal Standards

### a. Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint need not contain 'detailed factual allegations'; rather, it need only allege facts sufficient

4

to 'state a claim for relief that is plausible on its face.'" *Littell v. Hous. Indep. Sch. Dist.*, 894 F.3d 616, 622 (5th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 663. "Significantly, a complaint may proceed even if 'recovery is very remote and unlikely,' so long as the alleged facts 'raise a right to relief above the speculative level.'" *Littell*, 864 F.3d at 622 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). In evaluating the complaint, the Court takes "the well-pleaded factual allegations in the complaint as true" but does "not credit conclusory allegations or allegations that merely restate the legal elements of a claim." *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). Additionally, courts may "consider documents attached to the Rule 12(b)(6) motion 'that are referred to in the plaintiff's complaint and are central to the plaintiff's claim.'" *Allen v. Hays*, 812 F. App'x 185, 189 (5th Cir. 2020) (quoting *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010)).

### b. Qualified Immunity

Qualified immunity protects government officials sued in their individual capacities "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is an "immunity from suit rather than a mere defense to liability." *Pearson v. Callahan*, 555 U.S. 223, 237 (2009). Once a defendant has invoked the defense of qualified immunity, the plaintiff carries the burden of demonstrating its inapplicability. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009).

In *Saucier v. Katz*, the Supreme Court established a two-part framework to determine if a plaintiff has overcome a qualified immunity defense. 533 U.S. 194 (2001). First, the court asks

whether, taken in the light most favorable to the injured party, "the facts alleged show the [government official's] conduct violated a constitutional right." *Id.* at 201. Second, the court considers whether the allegedly violated right was "clearly established." *Id.* at 201. When deciding whether the constitutional right was clearly established, the court asks whether the law so clearly and unambiguously prohibited the conduct such that a reasonable official would understand that what she was doing violated the law. *Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir. 2013). "Answering in the affirmative requires the court to be able to point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity. This requirement establishes a high bar." *Id.*

Furthermore, even if "the defendant's actions violated a clearly established constitutional right," the court will then ask whether qualified immunity is nevertheless "appropriate because the defendant's actions were 'objectively reasonable' in light of 'law which was clearly established at the time of the disputed action.'" *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (quoting *Collins v. Ainsworth*, 382 F.3d 529, 537 (5th Cir. 2004)).

### III. Analysis

Defendants move to dismiss all of Plaintiff's claims under Rule 12(b)(6). Doc. #10. Specifically, with respect to Plaintiff's constitutional claims against Principal Rounds, Defendants argue that such claims are barred by qualified immunity. *Id.* at 15–22. With respect to all of Plaintiff's constitutional claims against KISD, Defendants argue Plaintiff has not sufficiently alleged a deprivation of rights pursuant to an official KISD policy or firmly entrenched custom, as required for municipal liability claims under *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). *Id.* at 12–15. Defendants also argue that Plaintiff has not sufficiently alleged facts to support her vagueness claim under the Fourteenth Amendment Due

Process Clause, or her Equal Protection Clause claim. *Id.* at 10–12. Finally, Defendants argue Plaintiff has not sufficiently alleged her claims under the Texas Constitution and TRFRA. *Id.* at 22–23. The Court will address each of Defendants arguments in turn.

### a. Plaintiff's Claims Against Principal Rounds

Defendants argue that Plaintiff's claims against Principal Rounds under the First and Fourteenth Amendments are barred by qualified immunity because the law surrounding Plaintiff's free speech and free exercise claims is not clearly established. *Id.* at 15–22. In response, Plaintiff argues that Principal Rounds' conduct violated her clearly established rights in light of the Supreme Court's decision in *Kennedy v. Bremerton School District*, 597 U.S. 507 (2022). Doc. #19 at 17–18. The crux of the parties' disagreement regarding *Kennedy*'s applicability to this case centers on their characterization of Plaintiff's claims. On one hand, Defendants argue it is "not clearly established that trying to keep teachers and students separate during a non-curricular student activity that had been pre-approved would violate the constitutional rights of a teacher, even after *Kennedy*." Doc. #10 at 22. Plaintiff, however, characterizes her claims more broadly. She argues that "Rounds categorically prohibited [Plaintiff] from praying in the presence of students," which is a violation of her clearly established First Amendment rights under *Kennedy*. Doc. #19 at 17–18. In other words, Defendants argue that Plaintiff's Complaint is limited to Principal Rounds' directive to Plaintiff not to participate in the SYATP event, whereas Plaintiff argues her Complaint asserts that she was generally forbidden to pray in the presence of students.

In *Kennedy*, the Supreme Court held that it was a violation of a high school football coach's free speech and free exercise rights when he was disciplined for engaging in private prayer on the football field after games. 597 U.S. at 543–44. The school district, relying on the Supreme Court's decision in *Lemon v. Kurtzman*, 403 U. S. 602 (1971) and its progeny, forbade such conduct out

7

of concern that a "reasonable observer could think government endorsement of religion had occurred when a District employee, on the field only by virtue of his employment with the District, still on duty engaged in overtly religious conduct." *Id.* at 519 (internal quotation marks omitted). However, the Supreme Court rejected the school district's argument, finding that the coach's private prayer did not amount to government speech and the Supreme Court had "long ago abandoned *Lemon* and its endorsement test offshoot." *Id.* at 531–34. Thus, the Supreme Court concluded the school district's actions amounted to punishment "for engaging in a brief, quiet, personal religious observance doubly protected by the Free Exercise and Free Speech Clauses of the First Amendment." *Id.* at 543. "And the only meaningful justification the government offered for its reprisal rested on a mistaken view that it had a duty to ferret out and suppress religious observances even as it allows comparable secular speech. The Constitution neither mandates nor tolerates that kind of discrimination." *Id.* at 543–44.

While the events giving rise to this lawsuit centered around SYATP, Plaintiff alleges that Principal Rounds categorically told her she could not pray "in the presence of students." Doc. #1 ¶¶ 20–21, 29, 79. Though Principal Rounds said this to Plaintiff in the context of the SYATP event, he did not limit his directive to SYATP. Indeed, Principal Rounds, in an email sent directly to Plaintiff outlining his concern regarding her participation in SYATP, stated that "[e]ven though it is before the school day, you are on campus visible to students in your role as an employee." *Id.* ¶ 21. Principal Rounds also told Plaintiff that she could pray in "private away from students," but not "in front of students." *Id.* ¶ 28. Since the SYATP incident, Plaintiff has ceased engaging in religious activity at Cardiff before the school day begins out of concern that students may be present. *Id.* ¶ 42. Thus, Plaintiff's allegations are not limited to Principal Rounds' directive not to participate in the SYATP event. And accepting the allegations in the Complaint as true,

*Kennedy* serves as an on-point case that clearly establishes that it is a violation of the First Amendment for a school to instruct its employee that she cannot pray in the presence of students. Therefore, Principal Rounds is not entitled to qualified immunity.

### b. Plaintiff's Municipal Liability Claims

Next, Defendants argue that Plaintiff has not alleged facts that show any deprivation of her constitutional rights occurred in accordance with an official KISD policy or custom. Doc. #10 at 12. To state a constitutional claim under Section 1983, a plaintiff must (1) allege a constitutional or statutory violation, and (2) show that "the alleged deprivation was committed by a person acting under color of state law." *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000). A local government is not liable for actions "solely by its employees or agents." *Monell*, 436 U.S. at 694. Rather, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under [Section] 1983." *Id.* For municipal liability claims under Section 1983, a plaintiff must identify "(1) an official policy [or custom], of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Pineda v. City of Hous.*, 291 F.3d 325, 328 (5th Cir. 2002).

"To proceed beyond the pleading stage, a complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts.'" *Pena v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (quoting *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997)). The Fifth Circuit has recognized "three ways of establishing a municipal policy for the purposes of *Monell* liability." *Webb v. Town of Saint Joseph*, 925 F.3d 209, 214 (5th Cir. 2019). First, a plaintiff may

demonstrate "written policy statements, ordinances, or regulations." *Id.* at 215 (internal quotations and citation omitted). "Second, a plaintiff can show 'a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *Id.* (quoting *Alvarez v. City of Brownsville*, 904 F.3d 382, 390 (5th Cir. 2018)). "Third, even a single decision may constitute municipal policy in 'rare circumstances' when the official or entity possessing 'final policymaking authority' for an action 'performs the specific act that forms the basis of the [Section] 1983 claim.'" *Id.* (quoting *Davidson v. City of Stafford, Tex.*, 848 F.3d 384, 395 (5th Cir. 2017)). The Fifth Circuit has held that "for purposes of Rule 12(b)(6), . . . a plaintiff need only plead facts that show that the defendant or defendants acted pursuant to a specific official policy, which was promulgated or ratified by the legally authorized policymaker." *Groden v. City of Dallas, Tex.*, 826 F.3d 280, 282 (5th Cir. 2016). In Texas, the authorized policymaker for a school district is its Board of Trustees (the "Board"). *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003) (citing TEX. EDUC. CODE. § 11.151(b)).

Plaintiff identifies the "Religion in the Schools" portion of the Employee Handbook as the relevant policy that was the moving force behind the alleged constitutional violations at issue. *See* Doc. #19 at 14–15. Defendants argue that Plaintiff's Complaint fails to sufficiently allege a policy because she does not allege that the Board approved of or even knew about the Employee Handbook. Doc. #10 at 14–15. To support their argument, Defendants rely on the Fifth Circuit's decision in *McClelland v. Katy Independent School District*, 63 F.4th 996 (5th Cir. 2023). In *McClelland*, the plaintiff was a student athlete who sent a video using a racial slur to a student at a rival school. 63 F.4th at 1001–02. The defendant-school district disciplined the plaintiff for the video in accordance with its Athletic Code of Conduct (the "ACC"). *Id.* at 1002. The plaintiff then asserted several First Amendment claims arising out of his punishment, arguing that the

10

school district was liable under *Monell* because it had adopted the ACC. *Id.* at 1011. The Fifth Circuit determined that the ACC could not serve as a "policy" for purposes of municipal liability because the plaintiff "did not allege facts demonstrating that the KISD Board had ratified the ACC, and the ACC itself does not indicate that it was ratified by the Board. In fact, the ACC appears to distinguish itself from 'the board-approved *Discipline Management Plan and Student Code of Conduct.*'" *Id.* at 1012.

This case differs in several regards to *McClelland*. For instance, Plaintiff has alleged that Principal Rounds' emails explicitly stated that "*Board Policy* prohibits staff members from leading students in prayer or praying with or in the presence of students" and "*per district School Board policy*, employees CANNOT pray with or in the presence of students." Doc. #1 ¶¶ 20–21 (emphasis added). And though the Employee Handbook distinguishes itself from "the official District Policy manual," it states that the Employee Handbook serves as a "summary," "guide," and "brief explanation" of "District policies and procedures." *See* Doc. #8, Ex. 2 at 9. Moreover, employees are required to sign and acknowledge that they have read the Employee Handbook as part of their mandatory training. *Id.* Thus, unlike the student athlete in *McClelland*, Plaintiff here has alleged facts demonstrating that the KISD Board has ratified the Employee Handbook. At minimum, the Employee Handbook, rife with KISD logos, "lends it some official imprimatur, and gives rise to a reasonable inference that the statement 'can be fairly identified as' an action 'of the government itself.'" *See Robinson v. Hunt Cnty., Tex.*, 921 F.3d 440, 449 (5th Cir. 2019) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)). As such, the Court finds that Plaintiff has sufficiently alleged that her constitutional rights were violated in accordance with an official policy that was promulgated or ratified by the KISD Board. Defendants' Motion to Dismiss is therefore denied to the extent it seeks dismissal of Plaintiff's claims on this basis.

### c. Plaintiff's Vagueness Claim Under the Fourteenth Amendment

Defendants next move to dismiss Plaintiff's Fourteenth Amendment due process claim, which asserts that the Employee Handbook is unconstitutionally vague.[2] Doc. #10 at 10. "A law is unconstitutionally vague if it (1) fails to provide those targeted by the statute a reasonable opportunity to know what conduct is prohibited, or (2) is so indefinite that it allows arbitrary and discriminatory enforcement." *A.M. ex rel. McAllum v. Cash*, 585 F.3d 214, 224–25 (5th Cir. 2009) (quoting *Women's Medical Ctr. of N.W. Houston v. Bell*, 248 F.3d 411, 421 (2001)). "A regulation is void for vagueness when it is so unclear that people 'of common intelligence must necessarily guess at its meaning and differ as to its application.'" *McClelland*, 63 F.4th at 1013 (quoting *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926)). The Fifth Circuit has held that "a facial challenge may only be sustained 'if the enactment is impermissibly vague in all of its applications.'" *Id.* (quoting *Home Depot, Inc. v. Guste*, 773 F.2d 616, 627 (5th Cir. 1985)). Moreover, because "a void-for-vagueness challenge is ultimately a due-process claim, a plaintiff must allege that he was deprived of a constitutionally-protected property or liberty interest." *Id.*

Here, Plaintiff has failed to allege that the Employee Handbook's "Religion in the Schools" provision is "impermissibly vague in all of its applications," nor has she alleged that she was "deprived of a constitutionally-protected property or liberty interest." *See id.* (internal quotations and citation omitted). As such, Plaintiff's vagueness claim under the Fourteenth Amendment must be dismissed.

---

[2] The Court notes that, in the Complaint, Plaintiff also asserts a Fourteenth Amendment due process claim premised on the overbreadth of the Employee Handbook. Doc. #1 ¶ 68. However, Defendants do not address the merits of Plaintiff's overbreadth claim in the Motion to Dismiss. *See* Doc. #10. Thus, the Court limits its analysis of Plaintiff's Fourteenth Amendment due process claim to the vagueness issue.

### d. Plaintiff's Fourteenth Amendment Equal Protection Claim

Defendants also move to dismiss Plaintiff's claim under the Fourteenth Amendment Equal Protection Clause. Doc. #10 at 11–12. "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *Duarte v. City of Lewisville, Tex.*, 858 F.3d 348, 353 (5th Cir. 2017) (cleaned up). To prevail on an equal protection claim, the plaintiff "must first show that 'two or more classifications of similarly situated persons were treated differently' under the statute." *Id.* (quoting *Gallegos–Hernandez v. United States*, 688 F.3d 190, 195 (5th Cir. 2012)). If that "threshold element is established," the Court must "determine[] the appropriate level of scrutiny to apply." *Id.* "If a suspect class (such as race or religion) or a fundamental right is implicated, the courts apply 'strict scrutiny.' If not, the courts apply 'rational basis review' and will uphold the classification if it bears a 'rational relation to a legitimate governmental purpose.'" *Stocker v. TDCJ Staff*, No. 2:23-CV-00248, 2024 WL 5301735, at *9 (S.D. Tex. Sept. 20, 2024) (quoting *Duarte*, 858 F.3d at 353–54), *report and recommendation adopted*, 2024 WL 4948840 (S.D. Tex. Dec. 3, 2024). In addition, "to establish an Equal Protection Clause violation, a plaintiff must prove 'purposeful discrimination resulting in a discriminatory effect among persons similarly situated.'" *Id.* (quoting *Butts v. Martin*, 877 F.3d 571, 590 (5th Cir. 2017)).

Defendants argue that Plaintiff failed to allege that any actions against her were motivated by "her race, gender, or any other protected category, or that she was treated differently than other similarly situated individuals." Doc. #10 at 12. However, the Complaint alleges that Plaintiff was "singl[ed] out" for praying in the presence of students and Defendants did not "similarly disciplin[e] other employees for their religious activities, such as the many staff members across

13

campuses who participate in the religious activities of other student groups." Doc. #1 ¶ 75. Plaintiff's allegations are sufficient to state an equal protection claim under Rule 12(b)(6). As such, the Motion to Dismiss is denied with respect to Plaintiff's Equal Protection Clause claim.

### e. Texas Constitution

Defendants argue that Plaintiff's claims under the Texas Constitution must be dismissed because there is no right of action for damages under the Texas Constitution. Doc. #10 at 22. Plaintiff concedes this point in her Response, but argues that her Texas Constitution claims are brought "solely for declaratory and injunctive relief." Doc. #19 at 18–19. "Under Texas law, equitable remedies and suits for injunctive relief for violations of the Texas Constitution are not prohibited." *Beary v. Harris Cnty.*, No. CV H-22-1249, 2023 WL 3311551, at *3 (S.D. Tex. Apr. 4, 2023) (citing *City of Elsa v. M.A.L.*, 226 S.W.3d 390, 392 (Tex. 2007)). Because Plaintiff only seeks injunctive relief for her Texas Constitution claims, Defendants have not presented a meritorious basis for dismissal of these claims. The Motion to Dismiss is therefore denied as to Plaintiff's claims under the Texas Constitution.

### f. Texas Religious Freedom Restoration Act

Finally, Defendants seek dismissal of Plaintiff's claim under the TRFRA. Doc. #10 at 23. The TRFRA "prevents any government agency in Texas from 'substantially burden[ing] a person's free exercise of religion' unless it 'demonstrates that the application of the burden to the person . . . is in furtherance of a compelling governmental interest; and . . . is the least restrictive means of furthering that interest.'" *A.A. ex rel. Betenbaugh v. Needville Indep. Sch. Dist.*, 611 F.3d 248, 258 (5th Cir. 2010) (quoting TEX. CIV. PRAC. & REM.CODE § 110.003(a), (b)). "According to the Texas Supreme Court, a burden under TRFRA is substantial if it is real vs. merely perceived, and significant vs. trivial. The inquiry is case-by-case and fact-specific." *Merced v. Kasson*, 577 F.3d

578, 588 (5th Cir. 2009) (citation omitted).

Defendants argue Plaintiff's TRFRA claims should be dismissed because she has failed to allege that Principal Rounds' directive "placed a 'real vs. merely perceived, and significant vs. trivial' burden on her exercise of religion." Doc. #10 at 23. However, Plaintiff alleges that Principal Rounds told her on numerous occasions that she could not pray in the presence of students. Plaintiff also alleges that, because of this directive, she has stopped engaging in any religious activity within her workplace. Doc. #1 ¶¶ 47–49. At the Motion to Dismiss stage, and given that the Fifth Circuit has counseled that TRFRA inquiries are "case-by-case and fact specific," the Court finds Plaintiff has sufficiently alleged that Defendants placed a substantial burden on her exercise of religion. Thus, the Motion to Dismiss is denied with respect to Plaintiff's TRFRA claim.

### IV. Conclusion

In conclusion, the Court finds that the Motion to Dismiss is hereby GRANTED IN PART. Doc. #10. Specifically, the Motion to Dismiss is GRANTED with respect to Plaintiff's Fourteenth Amendment due process claim premised on vagueness, and this claim is therefore DISMISSED WITH PREJUDICE. In all other respects, the Motion to Dismiss is DENIED.

It is so ORDERED.

__MAR 2 6 2025__
Date

The Honorable Alfred H. Bennett
United States District Judge